UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HASSAN HASSANI,** | **Civil Action No.  21-14124 (MCA)** |
| **Plaintiff,** | |
| v. | **OPINION** |
| **STATE OF NEW JERSEY, et al.,** | |
| **Defendants.** | |

Plaintiff Hassan Hassani, who is confined at Trenton Psychiatric Hospital, has filed a civil complaint and a renewed application to proceed *in forma pauperis*.  (ECF No. 1, 7.) At this time, the Court grants his IFP application and screens the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).[1]  For the reasons explained below, the Court dismisses the federal claims pursuant to its screening authority under 28 U.S.C. § 1915(e)(2)(B), declines supplemental jurisdiction, and provides Plaintiff with leave to submit an amended complaint within 45 days if he can cure the deficiencies in any of his federal claims.

I.      FACTUAL ALLEGATIONS

Plaintiff originally submitted his Complaint for filing on or about July 12, 2021.  (ECF No. 1 at 12.)  Among other claims, the Complaint alleges violations of Plaintiff's civil rights and state law by state employees at the New Jersey Institute of Technology ("NJIT") that occurred between September 27, 2015 and November 17, 2017, when he was expelled.  Plaintiff contends one of his professors used abusive language against him, and that NJIT administrators responded to his

---

[1] Plaintiff states that he is incarcerated but filled out the non-prisoner IFP application and mailed his IFP application from Trenton Psychiatric Hospital.  Although his account statement from the Department of Human Services is not certified, the Court assumes without deciding for purposes of this Opinion that he is a civil detainee and provisionally grants his IFP application.

complaints by calling the police, who, in turn, harassed him to see the school psychologist in January 2016. (Complaint at 3-4.) Another professor used abusive language against Plaintiff on February 4, 2016 and called the police department. On February 23, 2016, he was suspended from NJIT after a "rigged" hearing. (*Id.* at 4.) Plaintiff appears to allege that he was targeted for his religious beliefs, race, or national origin, as Plaintiff is "Arabic Muslim" and several of the state actors are allegedly Jewish. (*See id.* at 4.) Plaintiff also appears to sue the NJIT administrators under state law for breach of contract, fraud, and gross negligence in connection with his expulsion on November 17, 2017. (*See id.* at 19.)

Plaintiff alleges that he was arrested on February 18, 2016, by NJIT police officer Christopher Collins and falsely charged with harassment and disorderly conduct. (Complaint at 4.) Subsequently on May 31, 2017, NJIT Officer James Casey, who is allegedly Jewish, filed a false report claiming that Plaintiff made terroristic threats against an unnamed NJIT administrator. (*Id.* at 5-6.) Plaintiff was also charged with harassment. (*Id.*) Plaintiff was incarcerated at Essex County Jail. (*Id.* at 5.) The terroristic threats charges were administratively dismissed on July 25, 2017 by Judge Martin Cronin, and the harassment charges were "remanded." (*Id.*)

Plaintiff alleges that Officer Casey and NJIT Police Chief Jospeh Marshillo discriminated against him on the basis of his race and violated double jeopardy by refiling the terroristic threats charges on December 7, 2017. (*Id.* at 6-7.) Plaintiff further alleges that Prosecutor Robert D. Laurino maliciously prosecuted Plaintiff on the renewed charges beginning on January 6, 2018, and indicted Plaintiff on March 16, 2018. *See id.* at 7. Plaintiff lists the indictment number as ESX-18-000157. (*Id.* at 6.) Plaintiff also alleges that Laurino violated his due process rights when he increased the number of terroristic threat charges from one to eight and changed the original violation dates to include an offense on August 4, 2017, which led to Plaintiff's unlawful arrest on

a "work release violation" in a separate Hudson County family court case.[2]  Plaintiff also alleges

that the arresting officer James Casey committed perjury at the grand jury hearing on March 16,

2018, tampered with evidence, and violated Plaintiff's due process rights by changing the dates of

the original violations.  (*Id.* at 9.)  Plaintiff alleges he was falsely incarcerated for over 11 months

(*see id.* at 9) at Passaic County Jail, and appears to allege that he was jailed from January 25, 2019

to December 24, 2019.  (*Id.* at 16.)

   Plaintiff also alleges that the Essex Superior Judge Nancy Sivilli committed judicial

misconduct because she presided over both cases filed by Officer Casey and failed to dismiss the

charges due to double jeopardy and due process violations and/or lack of evidence.  (*Id.* at 9-10.)

He also alleges Judge Sivilli engaged in misconduct by failing to assign Plaintiff competent

defense counsel.  (*See id.* at 11, 13.)  Plaintiff further alleges that Judge Nancy Sivilli engaged in

"racial profiling" because she presided over his case after presiding over the trial of another

Muslim student facing similar charges in which Bayonne Police Officer Kyle Davis was also a

"key witness." (*Id.* at 11-15.)  Plaintiff further contends that Officer Davis filed a false report and

assaulted him on or about April 23, 2016.  (*Id.* at 14.) Plaintiff learned about the other Muslim

student's case from his defense counsel on or about December 1, 2017.  (*Id.* at 13.)  Plaintiff

contends that Judges Sivilli and Frasca are both biased and denied him a fair trial.  (*Id.* at 13-14.)

   Plaintiff also contends that his public defenders provided ineffective assistance of counsel

by failing to file motions in both cases and harassed and intimidated Plaintiff into taking a plea

deal, and failed to raise violations of his speedy trial rights.  (*Id.* at 7-11.)

---

[2] Plaintiff does not provide the date of this arrest.

Plaintiff alleges that he pleaded guilty before Judge Sivilli to two counts of terroristic threats on January 6, 2020, and received three years of probation.[3] (*Id.* at 10, 16.)  He contends that the State of New Jersey wrongfully convicted him.  (*Id.* at 10.)  Plaintiff also alleges that the State of New Jersey denied him a speedy trial when he was arrested on January 16, 2019, and not released from jail until December 24, 2019.  (Complaint at 16.)

Plaintiff seeks to have the disciplinary charges at NJIT rescinded and seeks permission to register for classes.  He also seeks 500,000,000 in damages and an investigation by the Federal Bureau of Investigation ("FBI") and Department of Justice ("DOJ").  Plaintiff also asks the Court to vacate his guilty plea and dismiss the criminal charges against him and seeks to bar the State of New Jersey from prosecuting him again.  Finally, he asks to have the offending state actors stripped of their badges and licenses.

## II.    <u>STANDARD OF REVIEW</u>

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner is proceeding *in forma pauperis*.  *See* 28 U.S.C. § 1915(e)(2)(B).  The PLRA directs district courts to *sua sponte* dismiss claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B).  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under

---

[3] On page 10 and 17 of his Complaint, Plaintiff lists the date of his plea as January 6, 2021, but that year appears to be a typo.  Elsewhere in the Complaint, Plaintiff lists his plea as occurring on January 6, 2020 (*see* Complaint at 16), and public records with respect to Indictment Number ESK-000-157 indicate that Plaintiff pleaded guilty on January 6, 2020, and was sentenced on February 21, 2020.  *See* New Jersey's Promis Gavel Public Access website, available at https://portal.njcourts.gov/webe41/ExternalPGPA/CaptchaServlet.

Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court accepts the facts alleged in the pro se complaint as true, draws all reasonable inferences in Plaintiff's favor, and asks only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Plaintiff is proceeding pro se, the Court construes his allegations liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.    DISCUSSION

The Court construes Plaintiff to raise civil rights claims under federal law as well as claims arising under state law. The Court considers the federal claims first followed by the state law claims.

### a.  The Federal Claims

The Court construes Plaintiff to bring civil rights claims under 42 U.S.C. 1983, which provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...[.]

In addition, the Court construes Plaintiff to bring claims under Title VI, which prohibits discrimination "on the ground of race, color, or national origin." *Astaraee v. Villanova University*, 509 F. Supp.3d 265, 270 (E.D. Pa. 2020) (citing 42 U.S.C. § 2000d).

The Court first addresses the timeliness of the federal claims.  "Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint sua sponte under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim." *Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 111–12 (3d Cir. 2013); *see also Hunterson v. Disabato*, 244 F. App'x 455, 457 (3d Cir. 2007) ("[A] district court may sua sponte dismiss a claim as time-barred under 28 U.S.C. § 1915A(b)(l) where it is apparent from the complaint that the applicable statute of limitations has run.").

Claims under Title VI are subject to a two-year statute of limitations.[4]  *See Thomas v. Advance Hous. Inc*. 475 F. App'x 405, 407 (3d Cir. 2012) (holding New Jersey's two-year statute of limitations period for personal injury actions applies to Title VI claims). The amount of time a § 1983 claimant has to bring suit is also determined by the personal-injury law of the state where the alleged harm occurred.  *Coello v. DiLeo*, 43 F.4th 346, 352 (3d Cir. 2022) (citing *N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)), and "New Jersey law gives litigants two years to file a personal-injury claim." *Id.* (citing N.J. Stat. Ann. § 2A:14-2); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007).  Courts assess when the limitation period begins to run by "looking to federal law[,]" *see Coello*, 43 F.4th at 352 (citing *Wallace*, 549 U.S. at 388), and "[u]nder that law, a § 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of her injury. *Id.* (citing *Genty v. Resolution Tr. Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)); *see also Montgomery v.*

---

[4] Courts in this circuit have held that Title VI does not provide for individual liability.  *Shannon v. Lardizzone*, 334 F. App'x. 506, 508 (3d Cir. 2009) (per curiam) ("because Title VI forbids discrimination only by recipients of federal funding, individuals cannot be held liable under Title VI"); *Moore v. Solanco School District*, 471 F.Supp.3d 640, 663 (E.D. Pa. 2020) (same).  The Court need not reach this issue because these claims appear time barred.

*De Simone*, 159 F.3d 120, 126 (3d Cir. 1998) ("It is axiomatic that under federal law, which governs the accrual of section 1983 claims, 'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'") (quoting *Genty*, 937 F.2d at 919).

Here, after giving Plaintiff the benefit of the "prison mailbox rule," *see Houston v. Lack*, 487 U.S. 266, 270–71 (1988), his Title VI claims and many of his § 1983 claims are barred by the two-year statute of limitations because they accrued more than two years prior to his filing of the instant Complaint on July 12, 2021.

Plaintiff's Title VI and/or § 1983 claims against the NJIT employees[5] arising from their alleged religious, racial, or national origin discrimination are time barred, as this alleged misconduct occurred between September 27, 2015, and November 17, 2017, when Plaintiff was expelled. These claims are dismissed without prejudice as untimely.

The § 1983 claims for false arrest, false imprisonment, and excessive force are also time barred. "[T]ime-barred claims cannot be resurrected by being aggregated and labeled 'continuing violations' under a theory of conspiracy." *Jones v. Middletown Twp.*, 253 F. App'x 184, 187 (3d Cir. 2007) (citation omitted). A claim for false arrest accrues on the date of arrest, and a claim for false imprisonment accrues on the date the plaintiff is bound over by a magistrate, arraigned on charges, or formally indicted. *See Wallace v. Kato*, 549 U.S. 384, 388–91 (2007). A claim for

---

[5] The Court does not construe Plaintiff to assert claims under 42 U.S.C. § 1981 because "[n]o private right of action lies against a state actor under § 1981." *Ford v. SEPTA*, 374 F. App'x 325, 326 (3d Cir. 2010) (internal citation omitted). Thus, "while § 1981 creates rights, § 1983 provides the remedy to enforce those rights against state actors." *McGovern v. City of Phila.*, 554 F.3d 114, 116 (3d Cir. 2009) (emphasis in original); *see also Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 723 (1989) (holding that the exclusive federal remedy against state actors for violations of rights guaranteed in § 1981 is 42 U.S.C. § 1983).

excessive force accrues when the force is applied. *See Allen v. City of Philadelphia*, No. 19-1066, 2020 WL 134204, at *3 (E.D. Pa. Jan. 10, 2020).

Here, Plaintiff's initial arrest occurred in Essex County on February 18, 2016, and the charges were dismissed on July 25, 2017. Plaintiff was allegedly indicted on the same charges on March 16, 2018, and it appears that he was rearrested on January 25, 2019.[6] Officer Davis allegedly filed a false report and assaulted him on or about April 23, 2016. All of these events occurred outside the two-year limitations period, and these claims are dismissed without prejudice as untimely.

Although federal law governs when a § 1983 claim accrues, the general rule is that state tolling principles apply to § 1983 claims. *See Hernandez v. Montoya*, 636 F.Supp.3d 511, 517 (D.N.J. 2022) (citation omitted). Generally, "New Jersey courts have found the doctrine of equitable tolling to apply in the following situations: (1) 'where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass;' (2) 'where a plaintiff has in some extraordinary way been prevented from asserting his rights;' and (3) 'where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum.'" *Id.* at 517 (citing *Fahey v. Hollywood Bicycle Center, Inc.*, No. 08-3573, 2009 WL 749856, at *4 (D.N.J. Mar. 18, 2009)). Plaintiff has not alleged any bases for equitable tolling. Because it is possible that Plaintiff could establish a basis for equitable tolling or show that these claims did not accrue at the time he was injured, the Court will provide Plaintiff with leave to submit an amended complaint as to these claims within 45 days.

---

[6] Plaintiff states that he was arrested on Passaic County charges on January 16, 2019 (Complaint at 16), and it is unclear if Plaintiff was arrested in connection with the March 2018 indictment for terroristic threats or on unrelated charges. To the extent Plaintiff was arrested on unrelated charges, he fails to state a claim for false arrest or imprisonment because he provides no facts about these charges.

Plaintiff also brings claims for malicious prosecution, fabrication of evidence, ineffective assistance of counsel, as well as due process and double jeopardy violations in connection with his prosecution, and he explicitly asks this Court to set aside his plea deal and wrongful conviction. Claims for malicious prosecution and fabrication of evidence accrue on the date when the underlying criminal proceedings are resolved in the plaintiff's favor.[7] *McDonough v. Smith*, 588 U.S. 109, 114 (2019); *Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *Randall v. City of Philadelphia Law Dep't*, 919 F.3d 196, 198 (3d Cir. 2019). Although these claims are not untimely, Plaintiff has not alleged that his conviction for terroristic threats has been set aside and may not use a civil rights action to invalidate his conviction.

Pursuant to the favorable termination rule in *Heck v. Humphrey*, 512 U.S. 477 (1994), an action under § 1983 seeking "damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable under § 1983 unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–7. Where a prisoner is seeking to set aside his conviction or sentence, "[h]e must seek federal habeas corpus relief (or appropriate state relief) instead."

Here, *Heck's* favorable termination rule appears to apply to Plaintiff's claims for malicious prosecution, fabrication of evidence, ineffective assistance of counsel (and the related conspiracy claims),[8] as well as his other claims for due process and double jeopardy violations in connection

---

[7] To the extent Plaintiff brings malicious prosecution claims arising from his prosecution on the initial terroristic threat charges, those claims are also time barred because they accrued when the charges were dismissed on July 25, 2017.

[8] In addition, "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v.*

with his prosecution.  Although Plaintiff alleges that he received a probationary sentence, the Third

Circuit applies *Heck's* favorable termination requirement where the prisoner has finished serving

his sentence and thus it is no longer possible to meet the "favorable termination" requirement of

*Heck* by obtaining federal habeas corpus relief.  *See Deemer v. Beard*, 557 F. App'x 162, 163–167

(3d Cir., Feb. 27, 2014); *see also Williams v. Consovoy*, 453 F.3d 173, 177–78 (3d Cir. 2006)

(declining to hold that *Heck's* favorable termination rule does not apply to defendants who are no

longer in custody absent clear direction from the Supreme Court).  These claims are dismissed

without prejudice unless and until Plaintiff sets aside his conviction for terroristic threats through

the state or federal courts.[9]  It is possible that Plaintiff may have omitted facts showing that he has

set aside his conviction for terroristic threats and meets the favorable termination requirement or

facts showing that his theory of liability would not undermine the validity of his terroristic threats

conviction.  If so, Plaintiff may submit an amended complaint within 45 days that includes these

facts.

Although the Court provides leave to amend, it dismisses with prejudice the § 1983 claims

for damages against the State of New Jersey because the state is not a person under 42 U.S.C. §

1983.  In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the United States

Supreme Court held that "[n]either a state nor its officials acting in their official capacities are

---

*Dodson*, 454 U.S. 312, 325 (1981); *Beaver v. Union Cnty. Pennsylvania*, 619 F. App'x 80, 83 (3d Cir. 2015) (citing Polk, 454 U.S. at 325).  Plaintiff's allegations of misconduct and ineffective assistance by his public defenders arise out of their performance of traditional functions of criminal defense lawyers.  Thus, Plaintiff fails to state a claim under § 1983.  *See El v. Atlantic City Freeholders Board of Commissioners,* No. 22-6281, 2023 WL 8271768, at *4 (D.N.J. Nov. 30, 2023).

[9] If Plaintiff is no longer serving his sentence, he may not meet the custody requirement for federal habeas relief and his petition may also be untimely; however, nothing in this Opinion prevents Plaintiff from filing a habeas petition in federal court or a similar petition for relief in state court.

'persons' under § 1983." The Supreme Court further noted, however, that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 71 n. 10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14; *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

The Court also finds that the claims against Judge Sivilli and Judge Frasca are barred by judicial immunity. It is well established that judges are immune from suit under § 1983 for monetary damages arising from their judicial acts. *See Mireles v. Waco*, 502 U.S. 9, 9, (1991); *Forrester v. White*, 484 U.S. 219, 225–27 (1988); *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). Courts must engage in a two-part inquiry to determine whether judicial immunity is applicable. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12.

With respect to the first inquiry, "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. Courts must "draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges," such as administrative acts. *Forrester*, 484 U.S. at 227.

As to the second inquiry, absence of jurisdiction is construed very narrowly. Thus, "[a] judge will not be deprived of immunity because the action he [or she] took was in error, was done maliciously, or was in excess of his authority; rather, he or [she] will be subject to liability only when he [or she] has acted in the 'clear absence of all jurisdiction.'" *Stump*, 435 U.S. at 356–57

(citation omitted); *see also Forrester*, 484 U.S. at 227 (an act "does not become less judicial by virtue of an allegation of malice or corruption of motive"); *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) ("Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed.") (citation omitted). Immunity will not be forfeited because a judge has committed "grave procedural errors," *Stump*, 435 U.S. at 359, or because a judge has conducted a proceeding in an "informal and ex parte" manner. *Forrester*, 484 U.S. at 227. Further, immunity will not be lost merely because the judge's action is "unfair" or controversial. *See Cleavinger*, 474 U.S. at 199–200 (immunity applies "however injurious in its consequences [the judge's action] may have proved to the plaintiff") (citation omitted); *Stump*, 435 U.S. at 363–64 ("Disagreement with the action taken by the judge . . . does not justify depriving that judge of his immunity. . . . The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit.").

In sum, judicial immunity focuses on the general nature of the challenged action, without inquiry into such "specifics" as the judge's motive or the correctness of his or her decision. *See Mireles*, 502 U.S. at 13 ("[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words, we look to the particular act's relation to a general function normally performed by a judge ....") (citation omitted).

Here, Plaintiff's allegations of bias do not strip Judges Sivilli and Frasca of immunity because the acts he complains of are normally performed by judges, i.e., presiding over cases, assigning counsel to indigent defendants, and deciding whether to dismiss charges. Although Plaintiff believes it was inappropriate for Judge Sivilli to preside over cases that originated in two different counties, there is no indication that she lacked all jurisdiction to do so. As such, the § 1983 claims against Judges Sivilli and Frasca are also dismissed on the basis of judicial immunity.

### b.  The State Law Claims

Plaintiff also attempts to raise claims under state law.  Where a federal court has original jurisdiction over certain claims, it also has supplemental jurisdiction over all other related claims that form part of the "same case or controversy" under Article III of the United States Constitution. 28 U.S.C. § 1367(a); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (same).  Section 1367 (c)(3) provides that district courts "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  As relevant here, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court <u>must</u> decline to decide the pendent state law claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original).  "Additionally, the federal court should be guided by the goal of avoiding needless decisions of state law ... both as a matter of comity and to promote justice between the parties." *Gibbs*, 383 U.S. at 726.  Here, the Court has dismissed the federal claims at an early stage and declines supplemental jurisdiction over any potential state law claims at this time.[10]

### IV.    <u>CONCLUSION</u>

For the reasons explained in this Opinion, the Court grants Plaintiff's renewed IFP application, dismisses the federal claims pursuant to its screening authority under § 1915(e)(2)(B), declines supplemental jurisdiction over all state law claims in light of the dismissal of the federal claims, and provides Plaintiff with leave to submit an amended complaint within 45 days.  An appropriate Order follows.

---

[10] If Plaintiff submits an amended complaint, he is free to reassert his state law claims.  If Plaintiff states one or more federal claims, the Court will address the state law claims at that time.

11/22/24

_____
Hon. Madeline Cox Arleo
United States District Judge